## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALLIANCE GLOBAL CAPITAL FUND, LP, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> WELLS FARGO BANK NA, *et al.*, <br><br> *Defendants* | No. 24-1130-ABA |

## MEMORANDUM OPINION

Plaintiffs Alliance Global Capital Fund, L.P. ("AGCF"), Alliance Warburg Capital Management, Inc. ("AWCM"), and Sun-Re Cheese Corporation ("Sun-Re") (together "Plaintiffs"), have sued Wells Fargo Bank, N.A., Wells Fargo & Company, Wells Fargo Advisors, LLC, and Wells Fargo Securities, LLC (together "Wells Fargo"), Lloyd's of London ("Lloyd's"), and John Does 1–50. Plaintiffs allege that Defendants engaged in manipulative and deceptive practices in violation of the Dodd-Frank Act (Count 1), violated their duty to act in good faith under Title VII of the Dodd-Frank Act (Count 2), breached their fiduciary duties to Plaintiffs under Title IX of the Dodd-Frank Act (Count 3), violated the Bank Secrecy Act (Count 4), violated section 10(b) of the Securities Exchange Act and 17 C.F.R. § 240.10b-5 (Count 5), engaged in a pattern of fraudulent misrepresentation (Count 6), engaged in civil conspiracy (Count 7), violated 42 U.S.C. § 1981 by engaging in racial discrimination (Count 8), violated 24 U.S.C. § 1983 by violating Plaintiffs' civil rights in concert with state actors (Count 9), violated 42 U.S.C. § 1985 by conspiring to interfere with Plaintiffs' civil rights (Count 10),[1] violated 42 U.S.C.

---

[1] This Count is erroneously marked as Count 4 in the Third Amended Complaint.

§ 1986 by neglecting to prevent civil rights violations (Count 11), intentionally inflicted emotional distress on Plaintiffs (Count 12), breached the implied covenant of good faith and fair dealing (Count 13), were unjustly enriched (Count 14), interfered with business relations (Count 15), were negligent (Count 16), breached a contract with Plaintiffs (Count 17), aided and abetted fraud (Count 18), and obstructed justice (Count 19). ECF No. 77. Plaintiffs seek, among other things, $600 billion in compensatory damages and $600 billion in punitive damages. *Id.*

Defendants have filed two motions to dismiss and a motion for sanctions. For the reasons provided below, the Court will grant the motions to dismiss and for sanctions and will dismiss the case with prejudice.

## I.    BACKGROUND

### A.    General Allegations

The Third Amended Complaint ("TAC") alleges that Defendants were part of a conspiracy that "involved multiple parties engaging in fraudulent activities over several years, encompassing fraudulent securities transactions, the inducement of Plaintiffs to retain Defendant transactional services, and other overt acts." ECF No. 77 ¶ 3.[2] Plaintiffs also allege that "Defendants subsequently concealed material facts and knowingly

---

[2] As will be discussed below, Plaintiffs have been represented by three sets of attorneys. The first was James O. Roberson, Jr., who filed the first three iterations of Plaintiffs' complaint. ECF Nos. 1, 5 & 15. Mr. Roberson moved to withdrew in May 2024, ECF Nos. 30 & 31; withdrawal was granted in July 2024, ECF No. 61. In August 2024, attorneys Eric Allen and Gregory Gardner entered appearances. *See* ECF Nos. 59 & 62. Mr. Allen was the signatory on Plaintiffs' Third Amended Complaint, ECF No. 77, which is the current operative complaint. Those attorneys moved to withdraw in June 2025, ECF Nos. 113 & 117; withdrawal was granted in July 2025, ECF No. 121. A third set of attorneys entered appearances in August 2025: Francisco Mundaca and Zachary Aman. ECF Nos. 125–128. They also have subsequently moved to withdraw. ECF No. 154.

provided false testimony to assist and abet state prosecutors, while facilitating and profiting from unlawful activities." *Id*. Although not stated in the complaint itself, Plaintiffs have subsequently made clear that the referenced prosecutions were of Steven Canady, whom Plaintiffs allege was a "principal" of each of the Plaintiff entities, and who has been convicted of fraud in multiple jurisdictions as discussed below.

Plaintiffs allege that "[a]s part of the scheme, the defendants intentionally withheld securities from the plaintiffs and made material misrepresentations regarding specific securities transactions, which the plaintiffs relied on to their detriment." *Id*. Plaintiffs allege that Defendants' actions have resulted in the loss of, among other things, "irrevocable capital and financing commitments exceeding $100 billion USD," "the acquisition of a conglomerate of financial services companies with over $3 billion," "the purchase of investment grade marketable securities exceeding $2 billion USD in value," "the sale of securities exceeding $20 billion USD in value in which Defendants Wells Fargo and Lloyd's were directly involved," "a $10 billion credit facility in which Defendant Wells Fargo was to provide for a securities transaction," and "a private debt transaction valued at $2 billion." *Id*.

### B.    Specific Allegations

The specific allegations in the TAC are convoluted and do not meet the mandate in Rule 8 for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is very difficult to discern which factual allegations relate to which counts. But the TAC details a number of financial transactions and the two criminal cases between 2010 and 2024 against Mr. Canady. Those transactions and criminal cases seem to form the basis for Plaintiffs' allegations. The allegations can be condensed into seven general transactions or events.

3

### 1.   The Energy Transaction

Plaintiffs allege that beginning in 2008, Wells Fargo agreed to act as the Corporate Trustee for a transaction involving AWCM's energy fund and its alleged "sale of a medium-term note securities amounting to $20 Billion" (the "Energy Transaction"). ECF No. 77 ¶¶ 16–20, 141. Plaintiffs assert that Lloyd's was to provide insurance guarantees for the sale. *Id.* ¶ 20.[3] In their response brief, Plaintiffs allege that Wells Fargo withdrew from the transaction because of race discrimination. ECF No. 98 at 27.[4]

### 2.   The Georgia Criminal Case

Plaintiffs allege that in August 2010, Mr. Canady was arrested in Atlanta, Georgia "related to allegations surrounding the substantial monetary loss" sustained by J.P. Global Investments ("JPGI") in connection with a 2010 transaction between AWCM and JPGI (the "Georgia Criminal Case"). ECF No. 77 ¶¶ 33, 66. Plaintiffs allege that the case concluded with "the wrongful conviction" of Mr. Canady following the entry of an allegedly involuntary *Alford* plea on April 29, 2014. *Id.* ¶¶ 33, 107; *see People v. All. Warburg Cap. Mgt.*, 71 N.Y.S.3d 923 (Table), 2017 WL 4767751, at *1 (N.Y. Sup. Ct. Oct. 17, 2017) (relating the facts of the Georgia Criminal Case). Plaintiffs further contend that this "compelled plea . . . was a consequence of the failed" 2011 Transaction, detailed

---

[3] Plaintiffs' allegations regarding Lloyd's seem to be limited to allegedly providing insurance to Wells Fargo in relation to the Energy Transaction and the 2011 Transaction (discussed below). *See* ECF No. 77 ¶¶ 20, 84, 99–100. Lloyd's is specifically named only in Count 7 for conspiracy for allegedly insuring Wells Fargo, *id.* ¶¶ 158, 162, but in Count 1, for violation of the Dodd-Frank Act, Plaintiffs also include Lloyd's with the other Wells Fargo Defendants, *id.* ¶ 118 ("This claim is brought by Plaintiffs against Wells Fargo & Co., Wells Fargo Bank N.A., Wells Fargo Advisors, Wells Fargo Securities and Lloyd's of London (Collectively referred to as 'Wells Fargo').").

[4] Page citations are to the ECF page numbers rather than the parties' pagination.

directly below. ECF No. 77 ¶ 107. In the Georgia Criminal Case, Mr. Canady pled guilty to engaging in a Ponzi scheme in which he "stole over $630,000 from three victims, including a church." *All. Warburg Cap. Mgmt.*, 2017 WL 4767751, at *1.

### 3.    The 2011 Transaction

Plaintiffs allege that AWCM had an opportunity in April 2011 to participate in a second securities transaction valued at €1 billion (the "2011 Transaction"). ECF No. 77 ¶¶ 23, 70. AWCM purportedly decided to use Wells Fargo "as the transactional facility for" the transaction. *Id.* ¶¶ 24, 71. Plaintiffs allege that on May 11, 2011, Randy Lucero, a Wells Fargo branch manager, told AWCM that a security of €250 million was placed in Wells Fargo's custody as part of the initial steps for the 2011 Transaction. *Id.* ¶¶ 27, 73. Plaintiffs allege that Mr. Lucero and other Wells Fargo representatives informed AWCM that there had been an error in the delivery instructions from the originating bank, HSBC Bank, PLC London ("HSBC"), provided to Wells Fargo. *Id.* ¶¶ 28, 77. The 2011 Transaction was never completed, which Plaintiffs allege Wells Fargo told them was due to the erroneous delivery instructions that HSBC provided. *Id.* ¶¶ 30, 80. Plaintiffs allege that on April 25, 2024, they discovered an order from an unrelated lawsuit, *Gazian v. Wells Fargo Bank NA*, No. 2:13-cv-01312-DGC, 2015 WL 3448575 (D. Ariz. May 29, 2015) (the "*Gazian* Order"), that they claim establishes the 2011 Transaction failed not because of erroneous delivery instructions, but due to "alleged acts of racial discrimination perpetrated by Wells Fargo." *Id.* ¶ 31.

The *Gazian* Order does not suggest any racial discrimination. Instead, it details that the plaintiff, Mr. Gazian, argued that an August 2, 2011 email (the "Brown Email"), which was disclosed after discovery had ended in that case, showed that Wells Fargo made false representations to Mr. Gazian that a law firm Mr. Gazian used, and later

accused of fraud, "were 'reputable businessmen' and that their transactions were legitimate." *Gazian*, 2015 WL 3448575 at *1. The Brown Email is from Wells Fargo representative Patrick Brown to Mr. Lucero. ECF No. 77 ¶¶ 31; 87; *see* ECF No. 83-2. In the Brown Email, Mr. Brown asserts that he has "conducted a review on the signor, Craig Cason for this account . . . Increase Capital Investments, LLC and found several items of concern" including that "[t]his individual has been investigated by the SEC for securities violations and accusations of fraud," "[t]he address used on the account is a virtual office that can be rented for $50/month, used frequently by shell companies to give the appearance of legitimacy even though no actual business is conducted there," and that Mr. Cason "has filed multiple bankruptcies and has several outstanding judgments (some in excess of $100K), which is not consistent with someone purporting to have $250mil in assets." ECF No. 83-2; *Gazian*, 2015 WL 3448575 at *2. Mr. Brown then advised, "[p]lease do not process the receipt of this security. We will be restricting the account and referring the matter to our Security Fraud group. Additionally, please DO NOT disclose this information to the client or the outcome of our review. Please advise the client that we cannot assist him with this request." ECF No. 83-2; *Gazian,* 2015 WL 3448575 at *2.[5]

---

[5] Plaintiffs allege that Mr. Cason was the signatory on the securities account involved in the 2011 Transaction and that Mr. Cason is African-American. ECF No. 77 ¶¶ 182–84. Plaintiffs falsely allege that in the Brown Email Mr. Brown states "that Mr. Cason 'does not appear to be of sufficient substance to warrant such a large transaction,'" which Plaintiffs contend "suggests that Mr. Brown's decision to block the Plaintiffs' account was influenced by racial biases and prejudices, rather than legitimate business concerns." *Id.* ¶ 184. This language does not appear in the Brown Email. ECF No. 83-2; *Gazian,* 2015 WL 3448575 at *2.

The TAC alleges that along with the Wells Fargo entities, "Lloyd's perpetuated this fraud through the use of wires and mails and committed multiple violations by engaging in an orchestrated scheme of deception to profit from the retention of the 250 Million Euro security for a 4-month period." ECF No. 77 ¶ 84. The TAC does not expand on this allegation.

### 4.   The 2013 Transaction

Plaintiffs allege that in January 2013, "Wells Fargo agreed to provide a $10 Billion USD credit facility" for a third securities transaction between AWCM, Endeavor Group, LLC, and MyCountry Mobile Pvt. Ltd (the "2013 Transaction"). *Id.* ¶¶ 32, 102. Plaintiffs allege that after Wells Fargo "did not confirm its commitment," the transaction failed. *Id.* ¶¶ 32, 102. In their response brief, Plaintiffs allege that Wells Fargo's withdraw from the 2013 Transaction was also racially motivated. ECF No. 98 at 33.

### 5.   The New York Criminal Case

Plaintiffs assert that in January 2015, AWCM and Mr. Canady were defendants in a second criminal case in New York state court (the "New York Criminal Case," and collectively with the Georgia Criminal Case, the "Criminal Cases"). ECF No. 77 ¶¶ 33, 105; *see All. Warburg Cap. Mgmt.*, 2017 WL 4767751. Plaintiffs allege that this action was related to the 2011 Transaction and the 2013 Transaction. *Id.* ¶¶ 33, 105, 107. Plaintiffs allege that in April 2017 during the New York trial, "Wells Fargo deliberately provided false testimony" as part of a "coordinated scheme" to assist the New York prosecutors in obtaining a conviction, and to evade federal liability related to those transactions. *Id.* ¶¶ 33, 108–09. Mr. Canady and AWCM were convicted on multiple counts of grand larceny, criminal possession of stolen property, a scheme to defraud,

and forgery. *All. Warburg Cap. Mgmt.*, 2017 WL 4767751, at *1. Plaintiffs do not allege which Wells Fargo entity is at issue, who testified, or what the alleged false testimony was. The court in the New York Criminal Case held, among other things, that Mr. Canady "created a company, [AWCM] and a number of subsidiary companies which were almost wholly fictitious" and he "used the companies to induce seven larceny victims to provide him with funds," as part of "a Ponzi scheme." *Id.* The court continued that Mr. Canady "chose the name of his fictitious company by combining key words from two legitimate global financial firms: 'Alliance' and 'Warburg'" and "created a website and promotional materials which claimed his company had offices in New York, Atlanta, London, Zurich, Madrid, Hong Kong and Dubai." *Id.* at *2. The court then explained Mr. Canady's and AWCM's fraudulent scheme in detail. *Id.* at *2–*3.

### 6.     The 2024 Transaction

Plaintiffs contend that on February 20, 2024, AGCF contracted with Pinnacle Investment and Asset Management Company ("Pinnacle") related to a proposed $2 billion private debt transaction (the "2024 Transaction"). ECF No. 77 ¶ 110. Plaintiffs allege that pursuant to the transaction, AGCF "gained access to substantial funds to pursue its investment goals across various sectors and regions," and Sun-Re expected to receive $8.5 million in financing. *Id.* ¶¶ 110, 114. Plaintiffs allege, however, that on March 15, 2024 Pinnacle withdrew from the transaction because of the allegedly false testimony Wells Fargo had given during the New York Criminal Case. *Id.* ¶ 114.

### 7.     The Sun-Re Transaction

Plaintiffs allege that Sun-Re initiated a wire transfer from its account with J.P. Morgan Chase Bank, N.A. ("JPMC") to Roberson Law Group P.C.'s IOLTA account with Wells Fargo on February 28, 2024 (the "Sun-Re Transaction"). *Id.* ¶ 111. This transfer

was allegedly intended to cover administrative costs stemming from the 2024 Transaction. *Id.* Sun-Re asserts that the following day, however, it discovered that while the JPMC wiring receipt listed the correct recipient's name, the account number was incorrect. *Id.* Plaintiffs allege that Sun-Re contacted James Roberson, of Roberson Law,[6] who Plaintiffs contend "visited several Wells Fargo branches in Montgomery County, Maryland, to check the wire's status" and learned the wire was not credited to his account. *Id.* Plaintiffs also allege that on February 29, 2024 they reached an agreement with Wells Fargo and JPMC for Wells Fargo to reroute the funds to the correct account. *Id.* ¶ 112. Plaintiffs allege that Wells Fargo has not yet done so and is still in possession of the funds. *Id.*

### C.    Procedural History

As noted above, Plaintiffs filed this case on April 18, 2024 and have amended their complaint three times. ECF Nos. 1, 5, 15, 77. Wells Fargo and Lloyd's have each filed motions to dismiss the TAC. ECF Nos. 81 & 82. Plaintiffs responded to both motions and Defendants replied. ECF Nos. 89, 98, 101, 105. Plaintiffs also filed motions for leave to file surreplies. ECF Nos. 102 & 106. Lloyd's filed a motion for sanctions, which Wells Fargo joined. ECF Nos. 115 & 131. Plaintiffs responded and Wells Fargo and Lloyd's replied. ECF Nos. 136, 137, 138. Plaintiffs also filed a motion for sanctions. ECF

---

[6] As noted above in footnote 2, Mr. Roberson was Plaintiff's counsel at the beginning of this case and filed the first three complaints. ECF Nos. 1, 5, 15. Mr. Roberson sought to withdraw his appearance around a month after the case was filed for Plaintiffs' failure to pay him. ECF Nos. 30, 31. Mr. Roberson filed additional reasons for the withdrawal under seal as well. ECF Nos. 38–39. Plaintiffs opposed Mr. Roberson's motion, ECF No. 41, but after a hearing, Judge Griggsby, who presided over this case before its transfer to the undersigned, granted Mr. Roberson's request to withdraw and stayed the case so that Plaintiffs could obtain new counsel, ECF No. 61.

No. 141. The Court held a hearing on the motions to dismiss and Defendants' motion for sanctions on February 19, 2026. ECF Nos. 152, 153.

As noted above, Plaintiffs have changed counsel several times throughout the case. ECF Nos. 61, 114, 121.[7] Current counsel entered their appearances after the motions to dismiss were briefed, ECF Nos. 125–128, 151, but in time to file a response to Defendants' motion for sanctions, to file Plaintiffs' motion for sanctions, and to defend against Defendants' motions at the hearing. On February 27, 2026, Plaintiffs' current counsel also filed a motion to withdraw, stating that "[p]rofessional considerations make it unreasonably difficult to carry out the representation effectively in this matter." ECF No. 154 at 1. Plaintiffs themselves purported to file a *pro se* response in opposition to their counsel's motion to withdraw. ECF No. 156. Lloyd's also filed a response. ECF No. 158.

## II.    STANDARDS OF REVIEW

The Court addresses herein Defendants' motions to dismiss and motion for sanctions. ECF Nos. 81, 82, 115. The following standards apply to those motions.

---

[7] More specifically, after Mr. Roberson withdrew, Gregory Gardner entered his appearance and moved for Eric Allen's *pro hac vice* admission, which was granted. ECF Nos. 59, 60. Mr. Allen entered his appearance for Plaintiffs on August 5, 2024, ECF No. 62. During his tenure, Mr. Allen filed the current TAC and the responses to the motions to dismiss. ECF Nos. 77, 89, 98. Mr. Allen moved to withdraw on June 6, 2025 (ten days before Lloyd's filed its motion for sanctions). ECF Nos. 113, 115. The Court granted the motion to withdraw because Mr. Allen represented that Plaintiffs had terminated his services and had hired new counsel to replace him. ECF No. 114. Mr. Gardner, who asserted that he had not been involved in the litigation other than to move for Mr. Allen's admission, moved to withdraw as well, which the Court granted. ECF Nos. 120, 121. Current counsel, Francisco Mundaca and Zachary Aman, entered their appearances in August 2025, ECF Nos. 125–28, followed by Jessica Mendoza in February 2026, ECF No. 151.

### A.    Failure to State a Claim

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and state a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, this Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments" or "the legal conclusions drawn from the facts." *Eastern Shore Mkts., Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000). When considering such a motion, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

### B.    Lack of Personal Jurisdiction

"Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). "[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter." *Id.* "[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion,

supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a p*rima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Id.* at 268. "When determining whether a plaintiff has made the requisite *prima facie* showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Id.* In other words, "[u]nlike under Rule 12(b)(6), the court may . . . consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019).

## C. Sanctions

Under Federal Rule of Civil Procedure 11, "[e]very pleading, written motion, and other paper must be signed" by counsel or, if unrepresented, the party. Fed. R. Civ. P. 11(a). And by presenting a document to the court "whether by signing, filing, submitting, or later advocating it" the presenter "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that, among other things, the document "is not being presented for any improper purpose" and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* 11(b)(1) & (3). If the presenter violates Rule 11, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.* 11(c)(1). The sanction "must be limited to

what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Id.* 11(c)(4).

## III.    DISCUSSION

Lloyd's and Wells Fargo have moved to dismiss all claims in the TAC. They have also moved for Rule 11 sanctions against Plaintiffs and their current counsel (having withdrawn requests for sanctions against prior counsel following their withdrawal, *see* ECF No. 116).

### A.    Wells Fargo's Motion to Dismiss

#### 1.    Statute of Limitations

Counts 1–14 and 17–19 of the TAC are based on events and transactions between 2010 and 2017. These claims are time-barred because the relevant statutes of limitations all expired before 2024, when this case was filed. Only Counts 16, and 17, which are at least partially related to the Sun-Re Transaction, are not completely time-barred. Stated another way, all claims based on any transaction other than the Sun-Re Transaction are time-barred.[8]

Plaintiffs do not argue that any of these claims have statutes of limitations long enough to make the claims timely. Instead, they contend that the statutes of limitations should be tolled mainly under three theories: fraudulent concealment, wrongful imprisonment, and the continuing violations theory. Plaintiffs allege that these theories apply because Wells Fargo "deliberately suppressed key financial records, fabricated

---

[8] This includes claims based on the 2024 Transaction. The gist of that transaction is that it was cancelled because of the allegedly fraudulent testimony Wells Fargo gave in the New York Criminal Case in 2017. ECF No. 77 ¶ 114–115. Thus, the 2024 Transaction is also based on Wells Fargo's actions that are outside the relevant statutes of limitations.

evidence, and misled Plaintiffs for over a decade, preventing discovery of the claims."
ECF No. 98 at 40. But Plaintiffs have not alleged sufficient facts, rather than legal
conclusions, to support the application of these theories to any of their claims. Instead,
the TAC and Plaintiffs' response brief make conclusory statements regarding an
undefined scheme involving the government and Defendants. *See, e.g.*, *id.* at 28–30. As
discussed below, Plaintiffs do not provide a reason to toll the applicable statutes, so
Counts 1–14 and 18–19 will be dismissed with prejudice.

> a)        *Fraudulent Concealment*

Plaintiffs first note that a "statute of limitations is tolled where a defendant
conceals material facts necessary for a plaintiff to discover the wrongdoing." ECF No. 98
at 39–40 (citing *Bailey v. Glover*, 88 U.S. 342, 349–50 (1874) and *Holmberg v.
Armbrecht*, 327 U.S. 392, 396–97 (1946)). Plaintiffs contend that "Defendants
deliberately suppressed key financial records, fabricated evidence, and misled Plaintiffs
for over a decade, preventing discovery of the claims" and that "Defendants concealed
material records, manipulated legal proceedings, and actively suppressed evidence
related to the 2011 and 2013 Transactions." *Id.* at 40 & 42.

Tolling the statute of limitations because of fraudulent concealment requires
allegations, and eventually proof, that "(1) the party pleading the statute fraudulently
concealed facts which are the basis of a claim, and that (2) the claimant failed to
discover those facts within the statutory period, despite (3) the exercise of due
diligence." *Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*, 828 F.2d 211,
218 (4th Cir. 1987). The plaintiff must state all averments of fraud, including those
pertaining to fraudulent concealment, with particularity. *Id.* at 219. Here, the TAC does
not contain the required particularized factual allegations. Plaintiffs have not adequately

14

alleged what Wells Fargo allegedly concealed, that Plaintiffs exercised due diligence, or that these actions occurred in such a manner that the alleged fraud could not have been uncovered within the limitations period. Their allegations do not support application of tolling based on fraudulent concealment.

### b)   *Wrongful Imprisonment*

Plaintiffs next contend that "[e]quitable tolling also applies where wrongful imprisonment, caused by Defendants' fraud, deprived Plaintiffs' principal of the ability to investigate and file suit." ECF No. 98 at 42 (citing *Wallace v. Kato*, 549 U.S. 384, 397 (2007)). They contend that Mr. Canady was imprisoned until 2023 and only obtained access to the allegedly concealed evidence in 2024. First, the TAC does not allege with anything approaching particularity that Wells Fargo engaged in fraud that caused wrongful imprisonment. Second, the Supreme Court in *Wallace* specifically held that simply being embroiled in criminal proceedings does not toll a statute of limitations. 549 U.S. at 396. Plaintiffs' allegations do not give rise to equitable tolling based on Mr. Canady's imprisonment.

### c)   *Continuing Violations Theory*

Plaintiffs next contend that there was an "ongoing civil conspiracy involving fraud, obstruction, and suppression of evidence from 2011 through at least March 2025," ECF No. 98 at 40 n.20, and that "each overt act in furtherance of the conspiracy restarts the limitations clock." *Id.* (citing *Chevron Corp. v. Donziger*, 833 F.3d 74, 123 (2d Cir. 2016)). The alleged conspiratorial acts from 2025 appear to have been performed by a non-party named Caliber 1 Construction, Inc. that does not appear in the TAC, and it is unclear how it might be related to Wells Fargo. *Id.* at 42. Plaintiffs' allegations of a conspiracy are completely conclusory, and the TAC does not allege a

continuing series of related unlawful conduct that stretch into 2025. Instead, the more recent allegations appear largely unrelated to the untimely transactions from 2017 and before. Plaintiffs have not shown that any statutes of limitations should be tolled based on the continuation of a conspiracy.

*　　　　*　　　　*

As shown, the vast majority of Plaintiffs' claims are time-barred and Plaintiffs have failed to raise factual allegations that, if true, would toll the applicable statutes of limitations. The remaining claims (as well as many if not all of the time-barred claims) are subject to dismissal for additional reasons that will be discussed below.

### 2.    Failure to State a Claim

In addition to being time-barred, Plaintiffs' claims fail for a variety of reasons, including that they are almost entirely comprised of legal conclusions rather than factual allegations. For example, Plaintiffs' contentions regarding race discrimination are not based on any non-conclusory factual allegations and are not supported by the evidence they cite, which implicates Rule 11 (as discussed below). Plaintiffs claim that the cancellation of the 2011 Transaction "was motivated by racial discrimination, as evidenced by" the Brown Email, which Plaintiffs allege "contains discriminatory language and reveals a bias against the Plaintiffs based on the race of the signor on the account, Craig Cason, rather than the Plaintiffs' qualifications or financial standing." ECF No. 77 ¶ 182. This is a facially false allegation that the Brown Email does not remotely support. ECF No. 83-2; *Gazian*, 2015 WL 3448575 at *2.

Second, Plaintiffs admit that some claims do not state a valid cause of action, adding an additional reason for their dismissal. Regarding Count 1 (Dodd-Frank Act), Plaintiffs concede that "[w]here statutes like Dodd-Frank are referenced without an

16

express cause of action, they are used to inform fiduciary and fraud-based duties—not to create new standalone claims." ECF No. 98 at 51. This is an admission that Count 1 does not allege a valid claim. Regarding Count 4 (Bank Secrecy Act), Plaintiffs concede that "the BSA provides no private right of action." *Id.* at 16. Regarding Count 19 (obstruction of justice), Plaintiffs assert that "Defendants' claim that Count XIX fails because 'obstruction of justice' is not a standalone tort is legally irrelevant. Plaintiffs cite obstruction as a factual basis for established torts—malicious prosecution, abuse of process, conspiracy, and aiding and abetting fraud—all actionable under Maryland law." *Id.* at 61-62. Plaintiffs thus acknowledge that they cannot maintain this count (and they did not plead claims for malicious prosecution or abuse of process).

Third, Plaintiffs' allegations that Wells Fargo gave false testimony or otherwise interfered with or influenced the Criminal Cases are conclusory and lack any details that would be sufficient to state a claim against Wells Fargo, including who falsely testified, what they testified about, or what documents were allegedly fabricated or suppressed. Thus, any claims based on Wells Fargo's conduct in connection with the Criminal Cases, in addition to being untimely, fail to state a claim against Defendants. Plaintiffs argue in their response brief that "[t]he TAC details how Wells Fargo and co-conspirators sabotaged key transactions—including the Energy, Conglomerate Acquisition, 2011, 2013, and 2024 deals—through false filings, withheld approvals, and a baseless prosecution." *Id.* at 59. But Plaintiffs do not cite to any part of the TAC that supports that statement.

Fourth, Count 9 (under 42 U.S.C. § 1983) can only be raised against those acting under the color of state law. In some circumstances, private persons can be liable under section 1983 if they were "jointly engaged with state officials in the challenged action."

17

*Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). But Plaintiffs make only conclusory allegations that Wells Fargo violated rights in concert with state actors, such as that Wells Fargo "acted in concert with" New York and Georgia law enforcement "to violate the Plaintiffs' civil rights, effectively transforming their conduct into state action," ECF No. 77 ¶ 190, or that Wells Fargo's involvement in the New York case rises to "conspiracy to violate the Plaintiffs' civil rights under the color of law," *id*. ¶ 195. The allegations in the TAC are simply not sufficient to allege Wells Fargo is the equivalent of a state actor. At most, these allegations render Wells Fargo a complainant, a witness, or a victim—not a state actor.

Fifth, regarding Count 12, "[b]ecause a corporation 'lacks cognizant ability to experience emotions, a corporation cannot suffer emotional distress [and] no claim for intentional infliction of emotional distress lies" for organizations such as Plaintiffs. *Interphase Garment Sols., LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 466 (D. Md. 2008) (quoting *F.D.I.C. v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994)). Thus, this count also fails for this reason.

Sixth, Counts 16 and 17 appear at least partially based on the Sun-Re Transaction, which could make those aspects of these claims timely. The factual allegations regarding the Sun-Re Transaction are that Wells Fargo did not properly complete a wire transfer because the account number on the wiring receipt was incorrect. ECF No. 77 ¶¶ 111–113. Defendants argue that Maryland's UCC bars the common law claims in, among other counts, Counts 16 and 17. Under Maryland's UCC § 4A-102, "resort[ing] to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article." Md. Code, Com. Law § 4A-102 cmt. Maryland's UCC is "intended to be the exclusive means of determining the rights,

duties and liabilities" of the parties to wire or funds transfers. *Id*. Here, excluding the conclusory statements of a multi-year conspiracy, the allegations underpinning the Sun-Re Transaction concern a routine funds transfer, rather than intentional misconduct. Thus, the UCC governs these claims and Counts 16 and 17 will also be dismissed. *See* Md. Code, Com. Law § 4A-207 (detailing the procedure for misdescription of a beneficiary).

The Court does not read the TAC as asserting that the wire transfer that underpins the Sun-Re Transaction (the only possible basis remaining to support a claim) is a basis for Count 15, interference with business relations. ECF No. 77 ¶¶ 227–234. Instead, the TAC seems to allege that Wells Fargo was negligent in connection with the Sun-Re Transaction, which as stated above, is barred by the UCC (and Plaintiffs have not alleged a violation of the UCC). *Id*. ¶ 113. Regardless, to the extent that it was Plaintiffs' intent to plead such a claim, Plaintiffs have not adequately alleged facts in connection with the Sun-Re Transaction that would support a claim of interference with business relations.

Plaintiffs have had four chances over two years with multiple counsel to file a complaint with the required factual allegations supporting any of their claims. They have failed to do so and it is clear after the February 19, 2026 oral argument and hearing that Plaintiffs' allegations are built on mere legal conclusions without factual basis. The Court will not allow additional attempts to amend. Plaintiffs' TAC as to Wells Fargo will be dismissed with prejudice.

### B.    Lloyd's Motion to Dismiss

As stated, the majority of Plaintiffs' claims are time-barred. Even if the non-time-barred claims alleged valid causes of action, Lloyd's is not named or implicated in those

Counts. Thus, the claims against Lloyd's will also be dismissed with prejudice. Nonetheless, Lloyd's raises additional reasons why its motion to dismiss should be granted, with which the Court agrees.

### 1. Failure to State a Claim

Lloyd's argues that the TAC is unclear what Lloyd's' role is in the alleged conspiracy, such that Plaintiffs have not plausibly alleged any claims against Lloyd's. Sometimes Plaintiffs allege that Lloyd's itself is a conspirator (because it allegedly issued or facilitated insurance contracts). ECF No. 77 ¶¶ 20, 99, 100, 158. Sometimes Plaintiffs simply lump Lloyd's in with Wells Fargo. *Id.* ¶ 118 (in Count 1 alleging that "[t]his claim is brought by Plaintiffs against Wells Fargo & Co., Wells Fargo Bank N.A., Wells Fargo Advisors, Wells Fargo Securities *and Lloyds of London* (Collectively referred to as 'Wells Fargo')") (emphasis added). And in their brief, Plaintiffs argue that they use "Lloyd's" as an umbrella term for unnamed and un-sued underwriters who allegedly issued insurance contracts to Wells Fargo. *See* ECF No. 89 at 27–28 ("In reality, when the Complaint and exhibits refer to 'Lloyd's of London,' they refer to the Lloyd's market and those acting through it – including the lead underwriters who issued the coverage for Wells Fargo."). Lloyd's also argues that, regardless of its role in Plaintiff's allegations, issuing insurance is not illegal. Plaintiffs argue that Lloyd's (or underwriters on the Lloyd's marketplace) provided insurance and was part of the conspiracy because that insurance allowed Wells Fargo to proceed with reduced risk. Plaintiffs recognize that "insurance is legal" but argue that "insuring and thereby encouraging fraudulent

conduct, with knowledge of that conduct, makes the insurer liable as a collaborator." *Id.* at 26.

Plaintiffs' allegations against Lloyd's are both unclear and conclusory, and when stripped away from the conclusory allegations that Lloyd's had knowledge of fraud, amount to nothing more than the allegation that Lloyd's insured Wells Fargo, which is not actionable conduct.[9]

### 2.    Lack of Jurisdiction

Lloyd's also argues that Plaintiffs provide no jurisdictional statement for Lloyd's and have not established general or specific jurisdiction over it. Plaintiffs erroneously argue general jurisdiction based on general forum contacts rather than the location of Lloyd's principal place of business or place of incorporation. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("[W]ith respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'") (quoting Lea Brilmayer Jennifer, *A General Look at General Jurisdiction*, 66 Tex. L. Rev. 721, 734 (1988)). Maryland is neither Lloyd's' principal

---

[9] Lloyd's also points out that it does not issue insurance but instead oversees the London insurance marketplace, though the Court need not rely on that error in granting the Lloyd's motion to dismiss. *See Soc'y of Lloyd's v. Ashenden*, 233 F.3d 473, 478 (7th Cir. 2000) ("Lloyd's, contrary to popular understanding, is not an insurer, but rather the overseer of the London insurance market."); *Haynesworth v. The Corporation*, 121 F.3d 956, 959 (5th Cir. 1997) ("Lloyd's does not underwrite insurance."); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1288 (11th Cir. 1998) ("Lloyd's itself . . . does not accept premiums or insure risks.").

place of business nor its state of incorporation. Therefore, Plaintiffs have failed to establish general jurisdiction over Lloyd's.

Plaintiffs allege specific jurisdiction based on actions of alleged co-conspirator Wells Fargo (arguing that Lloyd's is liable for co-conspirators' actions), including that "Wells Fargo personnel communicated with Plaintiffs' representatives (at least one of whom was in Maryland during relevant times) to mislead them about the status of their funds." ECF No. 89 at 20. Lloyd's argues that none of the transactions at issue relate to Maryland and that the only connection between Plaintiffs and Maryland that is alleged in the TAC is that one of Plaintiffs' former attorneys "visited several Wells Fargo branches in Montgomery County, Maryland." ECF No. 77 ¶ 111. These allegations alone are likely insufficient to confer specific personal jurisdiction over Wells Fargo, not to mention Lloyd's. But regardless, as discussed above, Plaintiffs have not adequately alleged a conspiracy between Lloyd's and Wells Fargo, so there is no basis to impute Wells Fargo's alleged actions to Lloyd's. Thus, Plaintiffs have also not sufficiently alleged that this Court has specific jurisdiction over Lloyd's.

For all of these reasons, the claims in the TAC against Lloyd's will be dismissed with prejudice.

### C.    Defendants' Motion for Sanctions

Lloyd's (with Wells Fargo joining) contends that Plaintiffs' and counsel's actions violate Rule 11(b)(1) and (3), asserting that the TAC was "presented for [an] improper purpose" and that "the factual contentions" therein lack "evidentiary support." Fed. R. Civ. P. 11(b)(1) & (3). *See* ECF Nos. 115 & 131. Lloyd's notes in its reply that while Plaintiffs' current counsel did not file the TAC or the responses to the motions to dismiss, they did file a response to the motion for sanctions, adopting the positions in

the TAC and motion-to-dismiss responses. ECF No. 138 at 2, 9–10. Current counsel also defended the responses to the motions to dismiss and for sanctions at the February 19, 2026 hearing. ECF No. 153 (hearing transcript); *see* Fed. R.  Civ. P. 11(b) (providing that when an attorney presents a paper "by signing, filing, submitting, *or later advocating it*" they are representing that it does not violate Rule 11). In their motion for sanctions, Defendants sought the hearing to give Plaintiffs another opportunity to present the factual bases for their claims. The Court granted that request and held the hearing on February 19, 2026. Plaintiffs' counsel forthrightly responded to the Court's questions at the hearing. Plaintiffs' counsel moved to withdraw shortly after the hearing. ECF No. 154. That motion remains pending.

Regarding Rule 11(b)(1), a court must "judge the conduct of counsel under an objective standard of reasonableness" when determining whether a filing is made for an improper purpose. *Stevens v. Lawyers Mut. Liab. Ins. Co. of N.C.*, 789 F.2d 1056, 1060 (4th Cir. 1986). In doing so, the court may consider "circumstantial facts" like "[r]epeated filings, the outrageous nature of the claims made, or a signer's experience in a particular area of law, under which baseless claims have been made." *In re Kunstler*, 914 F.2d 505, 519 (4th Cir. 1990).

The Court need not and does not decide whether the TAC was filed for an improper *purpose* in violation of Rule 11(b)(1). The Court does, however, conclude that the absence a factual basis for Plaintiffs' claims is another reason confirming the Court's ruling that the dismissal of the TAC will be with prejudice, as opposed to without prejudice. Despite multiple opportunities, Plaintiffs have not plausibly alleged—and when required to come forward with a factual basis for their allegations have failed to do so—that Defendants are part of a global effort to discriminate against Plaintiffs and have

cost Plaintiffs, and particularly Mr. Canady, who has been twice convicted of fraud, hundreds of billions of dollars without providing specific factual allegations supporting these incredible charges. Plaintiffs cite various exhibits in support of their allegations, but a cursory review of the proposed evidence shows it is irrelevant to the claims. For example, Plaintiffs' assertion that the *Gazian* order and Brown Email discussed above in connection with the motion to dismiss implicate racial bias is completely unsupported. *See* ECF No. 83-2; *All. Warburg Cap. Mgmt.*, 2015 WL 3448575 at \*2. Other allegations made in the TAC have been found to be false in the New York Criminal Case such as the nature of the Plaintiff entities and the amount of assets actually at issue. *See All. Warburg Cap. Mgmt.*, 2017 WL 4767751 at \* 1 (holding that Mr. Canady "created a company, [AWCM] and a number of subsidiary companies which were almost wholly fictitious" and "used the companies to induce seven larceny victims to provide him with funds" as part of "a Ponzi scheme").

Under Rule 11(b)(3), counsel must conduct a reasonable inquiry into the factual bases underlying a claim before filing or defending it. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 550 (1991). "When there is no factual basis for a particular claim, the attorney has violated Rule 11(b)(3)." *Chaplin v. Du Pont Advance Fiber Sys.*, 124 F. App'x 771, 774 (4th Cir. 2005). Filings violate Rule 11(b)(3) when they contain "allegations based on information which minimal factual inquiry would disprove," that "are unsupported by any information obtained prior to filing," or that an attorney knows are "unsupported by fact." *W. Maryland Wireless Connection v. Zini*, 601 F. Supp. 2d 634, 647 (D. Md. 2009) (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 410–411 (4th Cir. 1999) and then *Morris v. Wachovia Securities, Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) and citing *Blue v. U.S. Dept. of Army*, 914 F.2d 525, 542–43 (4th

Cir. 1990)). "Blind reliance on the client is seldom a sufficient inquiry." *In re Kunstler*, 914 F.2d at 514 (quoting *Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986)); *Letren v. Trans Union, LLC*, Case No. CV 15-3361-PX, 2017 WL 4098743, at *6 (D. Md. Sept. 15, 2017), *aff'd*, 770 F. App'x 95 (4th Cir. 2019) ("If a reasonable inquiry would have demonstrated the client's assertions were untrue, or if other relevant documents and witnesses are readily available, it is unreasonable for counsel to rely exclusively on his client for factual support.") (citation omitted).

The key factual contentions in the TAC lack evidentiary support in violation of Rule 11(b)(3). The Court has discussed above the baseless nature of many of Plaintiffs' allegations. And it is clear that even a cursory review of the evidence Plaintiffs cited in support of such allegations shows the evidence is largely irrelevant to the claims. For example, even though many of Plaintiffs' claims allege racial discrimination, on its face the evidence provided to support these assertions does not do so. *See In re Kunstler*, 914 F.2d at 515 ("Rule 11 sanctions are appropriate when a lawyer attempts to use discovery to support outrageous and frivolous claims for which there is *no* factual support."). Thus, counsel could not have conducted a reasonable investigation of the factual bases underlying the claims before proffering or defending them. And given the incredible nature of the claims and the fact that the TAC makes clear that Plaintiffs' principal, Mr. Canady, was convicted of fraud twice in relation to the allegations raised in the TAC should have caused counsel to pause and perform additional research before simply accepting the truth of Mr. Canady's allegations. Plaintiffs' response to the motion for sanctions likewise follows the now familiar pattern of making grand allegations without factual support. ECF No. 136. And finally, and most importantly, the Court provided

Plaintiffs with the opportunity to provide factual support for the claims in the TAC at the February 19, 2026 hearing. They were unable to do so. ECF No. 153.

For these reasons, although dismissal with prejudice is warranted for other reasons, Plaintiffs' violations of Rule 11 are an additional reason to dismiss this case with prejudice as sanctions. *See Ballentine v. Taco Bell Corp.*, 135 F.R.D. 117, 126 (E.D.N.C. Feb. 1, 1991) (finding dismissal with prejudice appropriate sanction under Rule 11 when complaint was filed only to harass defendant); *King v. Fleming*, 899 F.3d 1140, 1149–50 (10th Cir. 2018) (upholding dismissal with prejudice as Rule 11 sanction).

## IV.    CONCLUSION

The motions to dismiss filed by Wells Fargo and Lloyd's and Lloyd's' motion for sanctions, which was joined by Wells Fargo, will be granted. The case will be dismissed with prejudice.

A separate order follows.


Date:  April 30, 2026                                    _____/s/_____
                                                         Adam B. Abelson
                                                         United States District Judge